UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

IN RE:

3 Rebecca Court Corp.,

Debtor.

CASE NO.: 8-23-70624-reg

CHAPTER: 7

HON. JUDGE:
Robert E. Grossman

HEARING DATE:
May 8, 2023 at 9:30 A.M.

-----------------------------------------------------------------------X

## MOTION FOR IN REM RELIEF FROM THE
## AUTOMATIC STAY REGARDING REAL PROPERTY

Dinh Nguyen, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury:

Rushmore Loan Management Services, Inc., as servicer for U.S. Bank Trust National Association, as Trustee of the Dwelling Series IV Trust (together with any successor or assign, "Movant")  hereby moves this Court for an Order, Order, (i)  granting in rem relief with respect to certain real property having an address of 3 Rebecca Court, Port Jefferson Station, NY 11776 (the "Property") for a period of at least two years pursuant to 11 U.S.C. § 362(d)(4) ; (ii) vacating the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1 )-(2); (iii) granting waiver of the 14 day stay invoked pursuant to F.R.B.P. 4001(a)(3);  and (iv) for such other and further relief as is just and proper. In support of the motion (hereinafter the "Motion for Relief"), Creditor respectfully submits that:

## **FACTUAL HISTORY**

1.      The Movant is the holder of a Note (the "Note") executed by non-party co-debtor Salvatore D'Amato (the "Borrower" or "Co-Debtor") on June 25, 2007, whereby the Borrower promised to repay $417,000.00 plus interest ABN Amro Mortgage Group, Inc. (the "Original Lender"). To secure the repayment of the Note, the Borrower and Kelly A D'Amato aka Kelly Ann D'Amato (the "Co-Borrower" or "Co-Debtor", together with Borrower, the "Borrowers") executed a Mortgage in favor of the original lender, encumbering the Property, which was recorded on July 3, 2007, in the Suffolk County Clerk's Office in Liber M00021562, Page 615 (the "Mortgage," Note and Mortgage, collectively, the "Loan").  The Borrowers entered into a Loan Modification Agreement, effective October 1, 2010, which created a new principal balance of $445,035.35. The modified Loan was ultimately assigned to Movant by an assignment of mortgage dated October 23, 2020.  Copies of the Note, Mortgage, Loan Modification Agreement, and Assignments of Mortgage are attached hereto as **Exhibit A**.

2.      As the Borrowers became delinquent under the terms of the Loan, prior to the pendency of the instant bankruptcy case, a foreclosure action was commenced in the Supreme Court of the State of New York, County of Suffolk under Index No. 22299/2013 (the "Foreclosure"). Subsequently, a Judgment of Foreclosure and Sale (the "JFS") was entered in the Foreclosure on February 15, 2018. A copy of the entered JFS is annexed hereto as **Exhibit B.**

3.      For clarification purposes, your Affirmant respectfully takes this opportunity to advise this Court that the Plaintiff on the JFS is in the name of MTGLQ Investors, L.P., Movant's predecessor-in-interest. The Loan was transferred to Movant after commencement of the foreclosure action, and NY CPLR Section 1018 allows the Plaintiff to remain unchanged "…upon any transfer of interest, the action may be continued by or against the original parties unless the court directs the person to whom the interest is transferred to be substituted or joined in the

action." Therefore, the foreclosure action properly remained in the name of MTGLQ Investors, L.P.

4. Following the entry of the JFS, the first foreclosure sale was scheduled for April 11, 2018. However, on April 3, 2018, eight days before a scheduled foreclosure sale, the Borrower, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code under Case No. 18-72242-reg, in pro se, thus cancelling the foreclosure sale (the "First Case").

5. In the First Case, the Borrower failed to file the required statements and schedules and failed to propose or pay on any Chapter 13 plan. The first case was automatically dismissed pursuant to 11 U.S.C. § 521(i)(1) on May 21, 2018 (ECF Doc. No. 22).

6. A second foreclosure sale was scheduled for August 22, 2018. On August 21, 2018, one day before the scheduled foreclosure sale, the Borrower filed a voluntary petition under Chapter 13 of the Bankruptcy Code, in pro se, under Case No. 18-75670-reg (the "Second Case").

7. In the Second Case, the Borrower failed to file the required statements and schedules and failed to propose or pay on any Chapter 13 plan. Although the Trustee filed a Motion to Dismiss the Case on October 3, 2018 (ECF. Doc. No. 10), the Second Case was ultimately automatically dismissed pursuant to 11 U.S.C. § 521(i)(1) on October 9, 2018 (ECF Doc. No. 13).

8. Following the dismissal of the Second Case, the third foreclosure sale was scheduled for January 8, 2019. On January 4, 2019, four days before the scheduled foreclosure sale, the Co-Borrower filed a voluntary petition under Chapter 13 of the Bankruptcy Code, in pro se, under Case No. 19-70075-las (the "Third Case"). Movant reasonably infers that the Co-Borrower filed the Third Case to obtain a stay, because if the Borrower had filed on January 4, 2019, no stay would have taken effect pursuant to 11 U.S.C. § 362(c)(4).

9. In the Third Case, the Co-Borrower failed to file the required statements and

schedules and failed to propose or pay on any Chapter 13 plan. As such the Third Case was automatically dismissed pursuant to 11 U.S.C. § 521(i)(1) on February 16, 2019 (ECF Doc. No. 16).

10. After the dismissal of the third case, a fourth foreclosure sale was scheduled for April 29, 2019. On April 25, 2019, four days before the scheduled sale, the Co-Borrower filed a voluntary petition under Chapter 13 of the Bankruptcy Code, pro se, under Case No. 19-73014-las (the "Fourth Case").

11. In the Fourth Case, the Co-Borrower failed to file the required statements and schedules and failed to propose or pay on any Chapter 13 plan. As such the Fourth Case was automatically dismissed pursuant to 11 U.S.C. § 521(i)(1) on June 10, 2019 (ECF Doc. No. 14).

12. Following the dismissal of the Fourth Case, a fifth foreclosure sale was scheduled for August 22, 2019. On August 21, 2019, one day prior to a scheduled foreclosure sale, the Borrower filed a voluntary petition under Chapter 7 of the Bankruptcy Code, this time with counsel, under Case No. 19-75832-reg (the "Fifth Case"). Movant reasonably infers that the Borrower filed the Fifth Case to obtain a stay, because if the Co-Borrower had filed on August 21, 2019, no stay would have taken effect pursuant to 11 U.S.C. § 362(c)(4). During the Fifth Case, the Borrower obtained a Chapter 7 discharge on November 26, 2019 (ECF Doc. No. 18), and a Final Decree issued in the Fifth Case on February 19, 2020 (ECF Doc. No. 21). Since the Co-Borrower is not a party to the Note, and since the Borrower has received a Ch. 7 discharge, Movant notes that no party has a legitimate bankruptcy reason to file subsequent to the Fifth Case, given that all personal liability of the Borrower has been discharged on the Loan.

14. After the closing of the Fifth Case, the Movant was prohibited from proceeding because all New York State Foreclosure actions were stayed due to the COVID-19 Pandemic, thus preventing Movant from setting another sale.

15. Upon the lifting the of moratorium on New York State foreclosures, the Movant scheduled a sixth foreclosure sale for March 29, 2022. However, on March 24, 2022, five days prior to the scheduled sale, the Co-Borrower filed a voluntary petition under Chapter 13 of the Bankruptcy Code, in pro se, under Case No. 22-70520-las thus cancelling the sale (the "Sixth Case"). The Sixth Case was a barebones petition, without schedules or a plan. The Sixth Case was dismissed by Order entered on April 5, 2022 due to Co-Borrower's failure to pay the filing fee (ECF Doc No. 12).

16. Following the dismissal of the Sixth Case, Movant scheduled a seventh foreclosure sale for June 16, 2022. On June 13, 2022, just three days prior to the scheduled foreclosure sale, the Co-Borrower filed the seventh case under Chapter 13 of the Bankruptcy Code, in pro se, Case No. 22-71403-las (the "Seventh Case").

17. The Seventh Case was again a barebones petition, as with all previous filings by the Co-Borrower, without schedules or a plan. Although the Trustee filed a Motion to Dismiss with prejudice, on July 28, 2022 (ECF Doc. No. 13), the Court automatically dismissed the Seventh Case pursuant to 11 U.S.C. § 521(i)(1) on July 29, 2022 (ECF Doc. No. 16).

18. Following the dismissal of the Seventh Case, the Movant scheduled another foreclosure sale for October 3, 2022. On September 29, 2022, just five days prior to the scheduled sale, the Co-Borrower filed the eighth case in pro se, under Chapter 13 of the Bankruptcy code, Case No. 22-72631-las (the "Eighth Case"). As with the previous filings, the eighth petition was a barebones filing, without schedules or a Chapter 13 plan filed. This is also the Co-Borrower's third consecutive bankruptcy case filing in a one-year period with two prior dismissals. This case was automatically dismissed on November 14, 2022.

19. Following the dismissal of the Eighth Case, the Movant scheduled another foreclosure sale. On February 23, 2023, this instant case, under Chapter 7 of the Bankruptcy code,

Case No. 8-23-70624-reg was filed. As with the previous filings, the ninth petition was a barebones filing.

20. There have been a total of nine (9) bankruptcies filed between this Debtor and the Borrowers, and Movant's scheduled Foreclosure Sales have been repeatedly cancelled due to these last-minute filings. These repeat filings by the same Debtor and Borrowers, when coupled with the repeating deficiencies and failing to file complete petitions and Chapter 13 plans, give rise to the inference that the repeat filings are a scheme to hinder, delay, or defraud Movant in exercising its state law rights. Accordingly, Movant now seeks an Order pursuant to 11 U.S.C. § 362(d)(4), vacating the automatic stay and granting in rem relief from stay with respect to the Property. Copies of the Bankruptcy Court dockets are annexed hereto as **Exhibit C.**

21. Copies of the Notices of Sale for the scheduled Foreclosure Sales are annexed hereto as **Exhibit D**.

## CREDITOR IS ENTITLED TO IN REM RELIEF PURSUANT TO 11 U.S.C. § 362(d)(4)

22. Pursuant to 11 U.S.C. § 362(d)(4), courts are empowered to grant in rem relief from a stay affecting a creditor's property, such that any and all future filings by any party with a claimed interest in the property will not operate as an automatic stay for a period of two years. *See, e.g., In re Wilke*, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010); *In re Blair*, 2009 WL 5203738, *4 (Bankr. E.D.N.Y. 2009); *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009).

23. Because the stay attaches to the property, rather than to the filing parties, "in rem relief is a particularly effective method to combat tag-team serial filers who seek to prevent foreclosures." *In re Selinsky*, 365 B.R. 260, 264 (Bankr. S.D.Fla. 2007); *see In re Roeben*, 294 B.R. 840, 846 (Bankr. E.D.Ark. 2003); *In re Graham*, 1998 WL 473051, *2 (Bankr. E.D.Penn.

1998).

24. To obtain in rem relief, a creditor must provide evidence that: (i) a debtor or a group of debtors has made prior bankruptcy filings as part of a scheme; (ii) the object of which was to delay, hinder, or defraud creditors; and (iii) which involves either the transfer of some interest in the real property without the secured creditor's consent or court approval or multiple bankruptcy filings affecting the property. *See In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 870-71 (7th Cir. BAP 2012). Further, it is well-settled that the mere timing and filing of multiple prior bankruptcy cases by related debtors permits the inference of a scheme to hinder, delay, and defraud a creditor. *See, e.g., Blair*, 2009 WL 5203738 at *4, *citing Montalvo*, 416 B.R. at 38

25. Analyzing a very similar set of circumstances, the Court in *Blair* (*id*. at *4-5) granted in rem relief and found that:

> Here, Debtors have neither filed nor confirmed a chapter 13 plan. None of their chapter 13 cases were prosecuted to any meaningful extent. The timing and sequence of the filings is also significant. Each was filed on the eve of or shortly before significant events affecting the Property. The uncontroverted record of the filings and lack of any good faith prosecution of each of Debtors' prior cases allows this Court to draw a permissible inference and find that the instant petitions were part of a scheme of Debtor to hinder, delay, and defraud [creditor] BAC.
>
> Therefore, this Court will enter an Order such that any future bankruptcy filings by either of the Debtors, or any other person having an interest in the Property, will not operate as a stay of any action against the Property for a period of two years after the date of the entry of the orders hereon.

26. There has not been a meaningful attempt to propose a feasible plan in any of the prior Chapter 13 bankruptcy cases, or in the instant case. The frequent and last-minute filings demonstrate a clear pattern of delay designed to frustrate resolution of the underlying foreclosure. The instant petition is nothing more than a stall tactic to delay, hinder, and frustrate Movant in exercising its foreclosure rights.

27. Accordingly, Movant is irrefutably entitled to in rem relief from any further bankruptcy filings with respect to the Property for a period of at least two years pursuant to 11 U.S.C. § 362(d)(4)(B).

## CREDITOR IS ENTITLED TO RELIEF FROM
## ANY STAY PURSUANT TO 11 U.S.C. §§ 362(d)(1)&(2)

28. Alternatively, Movant is also entitled to relief from the automatic stay due to the lack of payments received from the Debtor.

29. 11 U.S.C. § 362(d)(1) permits courts to provide relief from an automatic stay where any party in interest lacks adequate protection.

30. Specifically, 11 U.S.C. § 362(d)(1) provides that:

> (d) On the request of a party in interest and after notice and a hearing the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> (1) For cause, including the lack of adequate protection of an interest in property of such a party in interest.

31. The Loan remains contractually due for the October 1, 2011 payment and for each subsequent payment thereafter. Therefore, relief from stay is warranted for cause pursuant to 11 U.S.C. § 362(d)(1). A copy of the EDNY worksheet (the "Affidavit") is attached as **Exhibit E**.

32. Relief pursuant to 11 U.S.C. § 362(d)(2) is also appropriate due to the lack of equity in the Property. The Debtor's outstanding amount of the obligations to Movant less any partial payments or suspense balance is approximately $795,904.03 as of March 1, 2023. According to an online valuation, the Property has an estimated value of $613,700.00 as of April 4, 2023. Accordingly, there is no equity remaining in the Property, and it is not necessary for effective reorganization. A copy of the Online Valuation is attached as **Exhibit F**.

33. Accordingly, grounds exist to vacate the stay in Debtor's case and Movant therefore requests that the automatic stay imposed under 11 U.S.C. § 362(a) be modified and terminated for cause in accordance with 11 U.S.C. §§ 362(d)(1)-(2) to permit Movant to pursue its rights under the Mortgage and applicable law, including, without limitation, the commencement and consummation of a foreclosure action and/or eviction proceeding.

34. Movant respectfully requests $1,050 in reasonable attorney fees and $188 in filing costs associated with the instant Motion.

**MOVANT IS ENTITLED TO A WAIVER OF THE STAY**
**PROVISION OF FED. R. BANKR. PRO. 4001(a)(3)**

35. Fed. R. Bank. Pro. 4001(a)(3) provides that "any order granting movant relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order unless the court orders otherwise."

36. In light of the history of filings and the negative impact on Movant's lawful right to sell the Mortgaged Premises pursuant to the Final Judgment (*see* Exhibit B), no legitimate purpose could be served by staying the requested relief any longer. The debtor clearly has no intention of participating in the bankruptcy process and therefore should not reap its benefits. Therefore, Movant is entitled to a waiver of the stay provision of Fed. R. Bankr. Pro. 4001(a)(3).

**WHEREFORE**, it is respectfully submitted that this Court should grant Movant's Motion for Relief in all respects, along with such other and further relief as is deemed to be just, proper, and equitable.

Dated: Garden City, New York
April 13, 2023

By:/s/  Dinh Nguyen
Dinh Nguyen, Esq.
FRIEDMAN VARTOLO LLP
Attorneys for Movant
1325 Franklin Avenue, Suite 160
Garden City, New York 11530
T: (212) 471-5100
F: (212) 471-5150